M. ANDERSON, Appellant, v. J. M. COWAN ET AL.

**Landlord and tenant:** ESTOVERS: RIGHT OF TENANT TO FIREWOOD.
The common law right of a tenant to cut firewood from the prem-
ises is in force in this state, but a determination of this right is
dependent upon the character of the timber and the prevailing
custom.

*Appeal from Lucas District Court.*— HON. F. W. EICHEL-
BERGER, Judge.

THURSDAY, OCTOBER 20, 1904.

ELISHA GREGG leased his farm for a term of five years
from March 1, 1899, to defendants. After lessor's death,
his widow and heirs conveyed the land and assigned the lease
to plaintiff in 1900, who, in this action, asks that defendants
be enjoined from cutting any timber trees for firewood. On
hearing the petition was dismissed, and plaintiff appeals.—
*Affirmed.*

*Pennick & Anderson,* for appellant.

*Stuart & Stuart,* for appellees.

LADD, J.— The lease contains no reference to the use
of timber for firewood, but appellees insist that the right to
estovers is an incident to be implied from the mere leasing
of the farm, and such was undoubtedly the rule at common
law. 1 Woods on Landlord & Tenant, section 247; 1 Tay-
lor's Landlord & Tenant, section 350. See 18 Am. & Eng.
Enc. of Law, 448; *Van Deusen v. Young,* 29 N. Y. 9;
*Wright v. Roberts,* 22 Wis. 161; *Webster v. Webster,* 33 N.
H. 18 (66 Am. Dec. 705). This is conceded, but it is
argued that the common of estovers is so out of harmony
with the spirit of our institutions that it ought not to be

adopted as a part of the law of the State. That the common law obtains in this State is not questioned, and appellant has not taken the trouble to point out any differences between our situation and that of the people of England which should lead to the rejection of this particular portion of it. Many decisions, in liberally interpreting the rules relating to estovers, have given as a reason therefor the existence of more extensive forests here than in England, and the necessity of reducing the land to cultivation; but we have found none suggesting the rejection of the doctrine entirely as inimical to our institutions. In many of the States woodland is abundant, and cutting it down by a tenant for life or for years has been allowed under circumstances which would be regarded as waste there. Tiedeman on Real Property, 69; *Proffitt v. Henderson,* 29 Mo. 325; 4 Kent's Commentaries, 76. Mr. Washburn, in his work on Real Property, says that: " In respect to what timber and what trees may be used for firewood, and whether the cutting of trees, though for neither of these uses, would be waste, depends upon the usages of the country, the customary mode of managing lands, and the manner in which the inheritance would be affected by such cutting, rather than the rules of the English common law; the rule here as to waste being that nothing which does not prejudice the inheritance of those who are entitled to the remainder or reversion can be deemed waste." 1 Washburn, Real Property, 128 *et seq.*

In large portions of this State there were no native forests, and in these innumerable artificial groves have been planted. In others, native timber is found in abundance, and, while not enough in any part to permit of indiscriminate destruction, we cannot say that because of local conditions the common of estover ought not to be regarded as a part of the law of the land. Estovers are of three kinds: (1) Housebote, being a sufficient supply of wood to repair and burn in the house; (2) plowbote, for making and repairing instruments of husbandry; and (3) haybote, for

repairing hedges and fences. The tenant is allowed to cut only for present use on the premises, and not elsewhere, and only such as may be suitable for the purpose. Few, if any, houses in this State have been constructed from native timber, and rarely will timber be made use of in the repairs of the house, or in the making instruments of husbandry, or in the repair of fences, save in replacing of posts. The dead and fallen timber is usually of no value save for fuel, and ordinarily the only benefit the tenant obtains from the wood lots is the fuel for his stove. Indeed, it is of little value for any other purpose. This, undoubtedly, the tenant may burn as firewood. It is said, in Coke on Littleton, 53b, that, if there is sufficient dead wood for fuel, the tenant has no right to cut down growing trees for that purpose, and in *Simmons v. Norton*, 7 Bing. 640, it was held that in felling trees for repairs only those suitable might be taken. According to Blackstone the tenant was not permitted to cut timber trees. See Cooley's Blackstone, 122, 144. And this appears to have been the view of Coke. Coke's Littleton, 53. In *McCullough v. Irvine's Executors*, 13 Pa. 438, the court held that whether cutting timber will be deemed waste depends on the custom of farmers, the situation of the country, and the value of the timber. If timber trees have been planted, they are presumed to have been placed to meet the special purposes of the owner, as to serve as an ornament to his farm, or as a wind brake for his stock; and in determining whether any may be appropriated by the tenant the use of the owner designed for them is always to be kept in view. Indeed, it may be safely laid down that the main object had in planting an artificial grove is not ordinarily to raise fuel, and that growing trees so planted may not be cut down without the owner's assent. With respect to the native forests we are inclined, because of the conditions in this State, to adhere to the common law more strictly than has been done in other jurisdictions in this country, and, unless growing trees are such as are customarily cut down for firewood, the

tenant ought not to be permitted to make use of them for this purpose. In the instant case the defendants cut for fuel, besides the dead and fallen timber, a number of live trees. They were of a kind ordinarily used in that vicinity for fuel, were suitable for that purpose only, and whether their removal worked any injury to the reversion was in dispute. The witnesses were before the court, and, in view of its superior opportunities of weighing the testimony, we are not inclined to interfere with the decree.— *Affirmed*.