MARY THOMAS ET AL. v. ROSA THOMAS.

(Filed 7 October, 1914.)

1. Estates — Tenant for Life — Waste — Common-law Definition— Modern Application.

While the common-law definition of waste is now held as sufficiently descriptive, the adaptation of the general principle to conditions existing in this country, as to the acts which constitute waste, have been variously modified until it has come to be established that a life tenant, as a general rule, may do what is required for the proper enjoyment of his estate to the extent that his acts and management are sanctioned by good husbandry in the locality where the land is situated, having regard, also, to its condition, and which do not cause a substantial injury to the inheritance.

2. Same—Sale of Timber—Improvements—Present Intent—Honest Expenditure—Other Improvements—Trials—Burden of Proof.

The general rule regarding waste by a life tenant in cutting and selling trees growing upon the inheritance is that he may not do so merely for his own profit; and when such is done for the improvement of the estate, it must be shown by him that sale of the timber was made with the present purpose of the improvements then contemplated, that the proceeds were honestly ex-

pended for such purpose, and with regard to the rule that the inheritance will not be substantially injured thereby, etc.; and it is not sufficient to show that the application of the proceeds of sale were subsequently made to improvements, or that in various ways he has expended sums of money in the improvement of the estate equaling that caused by the waste he has committed thereon.

APPEAL by plaintiff from *Peebles, J.,* at March Term, 1914, of LEE.

Civil action to recover damages for waste.

Plaintiffs, children of John P. Thomas, deceased, by a former wife, and owners of a vested estate in remainder under their father's will, sued the defendant, the widow of said Thomas, who occupies and possesses the land as life tenant under said will, claiming that the life tenant has committed waste upon the land.

The evidence on part of plaintiff tended to show that since defendant had entered on the property as life tenant under the will, she had sold a lot of timber for cross-ties, receiving pay therefor; also some cordwood and saw stocks, this last to a small amount and which had been paid for by labor done on the estate by the purchaser. Some of the witnesses testified that the permanent damage done to the property by the sale and removal of this timber would amount to $75 or $100, but the evidence did not show that defendant had realized more than $40 or $50 from said sale.

On examination in chief and cross-examination of plaintiffs' witnesses, it appeared that defendant, while in possession of her present estate, had made some repairs on the property; had reconstructed a cotton house worth from $12 to $25, the estimates of the witnesses varying as to its value; that at another time she had rebuilt an old tobacco barn, which had fallen, using as part the old timbers and had also built and repaired some fencing on the property, the value of these improvements being under $50.

The court, among other things, charged the jury: "You will consider the evidence you have here from the witness stand and say whether or not the plaintiffs have satisfied you by the

greater weight of the evidence—and that does not mean the greater number of witnesses, but that carries to your hearts and minds the greater amount of conviction; if in that way the plaintiffs have satisfied you that she sold more wood and timber off that land than she applied to repairing and keeping up the farm and buildings, then you should answer the first issue 'Yes'; otherwise, answer it 'No.' " Plaintiff excepted.

There was verdict for defendant on the issue as to commission of waste. Judgment, and plaintiff excepted and appealed.

*Hoyle & Hoyle for plaintiff.*
*R. H. Hayes for defendant.*

HOKE, J. In *Norris v. Laws,* 150 N. C., 604, the definition of waste as recognized at common law is given as follows: "A spoil or destruction, done or permitted with respect to lands, houses, gardens, trees, or other corporeal hereditaments by the tenant thereof, to the prejudice of him in reversion or remainder, or, in other words, to the lasting injury of the inheritance." Definitions substantially similar are approved in *Sherrill v. Connor,* 107 N. C., 630, and *King v. Miller,* 99 N. C., 584, where waste is said to be a "spoiling or destroying of the estate in respect to buildings, wood, or soil, to the lasting injury of the inheritance." While these definitions are still regarded as sufficiently descriptive, as shown in the decisions referred to and others of like kind here and elsewhere, in adapting the general principle to conditions existent in this country, the acts which constitute waste have been variously modified until it has come to be established that a tenant as a general rule may do what is required for the proper enjoyment of his estate to the extent that his acts and management are sanctioned by good husbandry in the locality where the land is situated, having regard, also, to its condition and which do not cause a substantial injury to the inheritance. *Norris v. Laws, Sherrill v. Connor, King v. Miller, supra; Lambeth v. Warner,* 55 N. C., 165; *Shine v. Wilcox,* 21 N. C., 631; *Ballentine v. Poyner,* 3 N. C., 110; *Sheppard v. Sheppard,* 3 N. C., 382; *Rutherford v. Wilson,* 95 Ark., 246; 37 L. R. A. (N. S.), p. 763; *Anderson v. Cowan,* 125 Iowa, 259; 106 Am. St. Rep., 303.

In *King v. Miller* the position is stated as follows: "While, in its essential elements, waste is the same in this country and in England, being a spoil or destruction of houses, trees, etc., to the permanent injury of the inheritance; yet, in respect to acts which constitute waste, the rules are not the same. Here an act is not waste in law which is not waste in fact. The real and important inquiry in such cases is, Has the land been abused, during the life tenant's occupancy, by a spoliation unwarranted by the usage of prudent husbandmen in respect to their own property, to the impairment of it, as a whole, in value?"

In *Sherrill's case, Avery, J.,* delivering the opinion, said: "While the courts of this country have generally adhered to the old definition of waste that we have already given, they have as uniformly maintained that what is permanent injury to the inheritance must of necessity depend often upon the circumstances attending a particular case, and that rules laid down in England for determining what acts constituted waste there were not always applicable in a new country, where the same acts might prove beneficial instead of detrimental to the inheritance. *Gaston, J.,* in *Shine v. Wilcox,* 1 Dev. and Bat. Eq., 631, says: 'While our ancestors brought over to this country the principles of the common law, these were, nevertheless, accommodated to their new condition. It would have been absurd to hold that the clearing of the forest, so as to fit it for the habitation and use of man, was waste. . . . We also hold that the turning out of exhausted land is not waste.' The Court in that case reached the conclusion that it was for the jury to determine whether, in clearing additional land or turning out that which had been exhausted, the tenant for life acted as a prudent owner in fee would have done, had he been cultivating the land for a support or for profit. Substantially the same reasoning is adopted in other cases decided before and since that opinion was delivered, here and in other States." And in *Norris v. Laws, Associate Justice Walker* thus succinctly states the principle: "We have held that what is a permanent injury to the inheritance must often depend upon the facts and circumstances of the particular case under consideration, and the jury must determine, under

proper instructions of the court, whether the tenant for life, in what he has done or omitted to do, has acted with the same care as a prudent owner of the fee would have exercised if he had been in possession, cultivating or using the land for a support or for profit."

In the practical application of the doctrine, as it now prevails, and under the restrictions and limitations as indicated, a tenant has been allowed to clear land required for the proper enjoyment of his estate, and where he may clear, it seems that he may sell the timber for his own benefit. Under his right of common estovers, towit, housebote, plowbote, and haybote, he may cut sufficient timber to repair the necessary buildings already on the premises and for fuel; second, for making and repairing implements of husbandry, and third, for repairing fences and hedges. *Parkins v. Coxe*, 3 N. C., 339; *Anderson v. Cowan, supra.* But the general rule is that the standing timber growing on land is considered a part of inheritance, and a tenant is never allowed to cut and sell timber therefrom merely for his own profit (*Dorsey v. Moore*, 100 N. C., 41; *Miles v. Miles*, 32 N. H., 147), and in case he has done this in violation of the rights of the remainderman or reversioner, he may not recoup or set off against such a demand the costs or profits from repairs or improvements made by him at another time. *Morehouse v. Cotheal*, 22 N. J. L., 521.

It may be that the cutting and selling of timber by a tenant for the present purpose of making necessary repairs on buildings already on the premises can, at times, be sustained. Such a course seems to have been approved in a few cases, as in *Loomis v. Wilbur*, 5 Mason, 13 Fed. Cases, No. 8498, where *Justice Story* states the proposition as follows: "If the cutting down of the timber was without any intention of repairs, but for sale generally, the act itself would doubtless be waste; and if so, it would not be purged or its character changed by a subsequent application of the proceeds to repairs. But if the cutting down and sale were originally for the purpose of repairs, and the sale was an economical mode of making the repairs, and the most for the benefit of all concerned, and the proceeds were *bona fide*

THOMAS *v.* THOMAS.

applied for the purpose in pursuance of the original intention, it does not appear to me to be possible that such a cutting down and sale can be waste. It would be repugnant to the principles of common sense that the tenant should be obliged to make the repairs in the way most expensive and injurious to the estate."

Notwithstanding the closing sentences of the learned judge, or rather in correct interpretation of entire excerpt, if such a privilege can be upheld at all, it is only in very exceptional instances, and it must be made to appear that the cutting and sale was with a present view of making needed repairs; that the proceeds have been honestly expended for such purpose, and that no substantial injury to the inheritance has been caused, or, as said in the statement, "that it is most for the benefit of all concerned."

Pursuant to these authorities, we must hold that there was error in the directions given the jury on the present trial. There was no evidence offered that the cutting and sale of this timber, on the part of the widow, was with the purpose of making needed repairs or that the proceeds were expended for any such purpose. On the contrary, the defendant has been allowed to justify for an act that ordinarily constitutes waste, by showing in a general and indefinite way that, during her tenancy, she has expended for repairs an amount fully equal to the value of the timber sold.

On the record as it now appears the defendant, in selling the timber for cross-ties, etc., has *prima facie* committed an act of waste, and before she can be excused, it is incumbent upon her to show, as heretofore intimated, that the cutting and sale of the timber was with the present view of making necessary repairs on the property; that the proceeds were honestly expended for the purpose, and that such a course was in accordance with good husbandry and caused no substantial damage to the inheritance.

There is error entitling plaintiffs to a new trial of the cause, and it is so ordered.

New trial.