JOHN M. FLEMING ET ALS. v. C. H. SEXTON ET ALS.

(Filed 18 October, 1916.)

**1. Pleadings—Issues—Tenant by the Curtesy.**

Where the defendant is in possession of lands of his deceased wife, which the plaintiff claims in his action alleging title, which is denied, it is competent for the defendant, without specially pleading it, to show that issue had been born alive of the marriage, capable of inheriting it, and that he was tenant by the curtesy, and as such held the legal title thereto for his life, with the right of possession.

**2. Tenant by the Curtesy—Evidence—Issue Born Alive—Interest.**

Where the defendant is in possession of the lands in dispute, claiming the right thereto as tenant by the curtesy, it is competent for him to testify directly to the fact that issue of the marriage had been born alive, notwithstanding his interest in the result of the action, which goes to its weight and not to his competency to testify thereto.     ·

**3. Tenant by the Curtesy—Issue Born Alive—Instructions—Appeal and Error.**

As to whether it is necessary for the child to have an independent life from its mother after the severance of the umbilical cord in order for the husband to be tenant by the curtesy consummate in his wife's land, after her death, *quære*. But when there is evidence that the child existed independently of the mother, for a while, a charge to the jury that they must so find in order that the defendant should establish his right as tenant by the curtesy, if erroneous, is not error prejudicial to the plaintiff.
               ○

**4. Tenant by the Curtesy—Issue Born Alive—Wife's Declarations—Evidence.**

Where the defendant claims title and possession of his wife's land after her death, as tenant by the curtesy, declarations of the deceased wife that the child was not born alive are incompetent as evidence, if not shown to have been made *ante litem motam*.

**5. Estates—Life Tenants—Waste—Cutting Timber—Improvements.**

The cutting of standing timber on lands used for erecting buildings and making other improvements thereon, or such as had reached its highest development and begun to deteriorate, and similar acts which tend to increase rather than diminish the value of the inheritance, are not acts of waste when done by the life tenant, that will deprive him of his estate, under the modern doctrine now obtaining here.

**6. Judgments—Non Obstante—When Allowed.**

Judgments *non obstante, veredicto* will not be allowed except where the plea confesses a cause of action and sets up new matter in avoidance which is insufficient, although true, to constitute a defense or a bar to the action.

CIVIL ACTION tried before *Lyon, J.,* at February Term, 1916, of HARNETT.

This is an action to recover possession of the tract of land described in the complaint, the rents and profits thereof during its occupancy by the defendants, and damages for the cutting and sale of certain timber.

The plaintiffs allege that they are the owners in fee of the land and that the defendants are in the wrongful possession thereof, and these allegations are denied by the defendants.

It was admitted that the plaintiffs, claiming by inheritance through Irene McCoy, who intermarried with the defendant Sexton, were the owners in fee of said land unless a child was born alive of the marriage of said Irene McCoy and the defendant Sexton, and that if a

child was born alive, that the defendant Sexton was entitled to a life estate in said land as tenant by curtesy.

There was evidence of the birth of issue alive, and the jury so found.

It was admitted by defendant Sexton that he sold the timber from said land of the value of $1,100, but he contended that this was not waste, and offered evidence tending to prove that the timber which he sold had reached its full growth and was deteriorating; that he sold the timber for the purpose of making permanent improvements on the land, and so used the proceeds, and that the inheritance had been increased in value.

The evidence offered by the defendants to prove the birth of issue alive was objected to by the plaintiffs upon the ground that the issue was not raised by the pleadings, and that the evidence itself was incompetent.

The plaintiffs also objected to the evidence offered by the defendants to prove that the land had increased in value, that the timber was cut and sold for the purpose of making improvements on the land, that it was so used, and that the inheritance had increased in value.

There was a verdict and judgment for the defendants, and the plaintiffs appealed.

*B. C. Beckwith and Baggett & Baggett for plaintiffs.*
*Clifford & Townsend for defendants.*

ALLEN, J. This action was commenced to recover possession of the land described in the complaint, rents and profits during occupancy by the defendants, and damages for trespass in cutting and selling timber from the land.

The plaintiffs proceed upon the theory that they are the owners in fee of the land through inheritance from Irene McCoy, who was the owner in fee and intermarried with the defendant Sexton, and that the possession of the defendants is wrongful.

The defendant filed answer denying the title of the plaintiffs, and on the trial offered evidence tending to prove that during his marriage with the said Irene McCoy a child was born alive of said marriage capable of inheriting, and, therefore, contended that he was the owner of a life estate in said land as tenant by curtesy.

If, therefore, the evidence offered by the defendant to prove the birth of issue was competent and sufficient to be submitted to the jury, it follows, as the four requisites to an estate by curtesy—marriage, seizin of wife, birth of issue capable of inheriting, and death of the wife—would be present, that the plaintiffs would not be entitled to recover the possession of the land nor would they be entitled to the rents and profits.

The words "capable of inheriting" are taken from the common law, and mean simply that the child shall be in the line of inheritance, and if the inheritance is in tail male the birth of a female child would not be sufficient to create the estate, and *vice versa*.

This would leave open for investigation only the question of the liability of the defendant, as life tenant, for waste.

It must be kept in mind, however, that when the evidence was offered by the defendant as to the condition of the land and the improvements made, that the question of the birth of issue was then pending before the jury and had not been settled, and if the evidence was competent either upon the theory that the plaintiffs were the owners in fee absolute or in remainder, there would be no error in admitting it.

Let us, then, see if any evidence of the birth of a child alive was admissible on the issue raised by the pleadings, and whether the evidence offered was competent, and of sufficient probative force to be submitted to the jury.

The plaintiffs allege that they are the owners in fee, and entitled to immediate possession of the land described in the complaint, and the defendant denies both of these allegations.

This raised an issue of title and of the right to possession, and under it the defendant had the right to offer evidence tending to prove a legal as distinguished from an equitable defense (*Farrior v. Houston,* 95 N. C., 580; *Locklear v. Bullard,* 133 N. C., 263), and the facts showing an estate by curtesy are legal and require no aid from a court of equity.

The case from New York, relied on by the plaintiffs, holding that a defendant cannot offer evidence of adverse possession under a general denial, is contrary to our decisions. *Farrior v. Houston,* 95 N. C., 578; *Mfg. Co. v. Brooks,* 106 N. C., 112; *Cheatham v. Young,* 113 N. C., 161; *Shelton v. Wilson,* 131 N. C., 501.

It has also been held, under certain conditions, that evidence of an estoppel may be offered by the defendant without pleading it (*Weeks v. McPhail,* 129 N. C., 73), and that it is competent, under a general denial, to show that any deed in the chain of title of the plaintiff is void because made contrary to statute, or by a grantor mentally incapable, or for fraud in the factum. *Mobley v. Griffin,* 104 N. C., 116; *Averitt v. Elliott,* 109 N. C., 564.

This rule prevails because the pleadings are general in actions to try title to land. The plaintiff alleges ownership and under this allegation is permitted to establish his title in any legitimate way, by a connected chain of title or by adverse possession with or without color, by proof of tenancy, etc.; and the same latitude is allowed the defendant in making his defense.

"Under the plea of the general issue the plaintiff is required to prove a present right to the premises in dispute. And, consequently, whatever will operate as a bar to the plaintiff's right of possession will cause him to fail in his proof, and entitle the defendant to a verdict upon the general issue. . . . So in those States which have adopted the code system it is usually held that the defendant may under the general denial prove any fact which will defeat the plaintiff's cause of action." 9 R. C. L., 897-898.

The plaintiff carries the burden of proving his legal right to possession, and the defendant is permitted to prove facts which show that his possession is lawful.

The witnesses who testified to the birth were the defendant and the nurse, both of whom were present and purported to testify to facts within their knowledge, and as neither was testifying to a transaction with a deceased person, there was no disqualification to either except interest, which goes to the weight of the evidence, and not to the competency of the witness to testify.

The defendant, who was corroborated by the nurse, testified: "During my married life there was a child born to me and my wife. That child was living at the time of its birth. I was present in the room with my wife at the time of the birth of the child. The midwife, Sue Williams, was also present. She is here today. There was no one else there at the time of the birth but we three. The evidence of the new-born child, a little groan or noise, and some little blubber from nose and mouth and pulsation of the heart. I observed the little muscular tremor, blubber of the nostrils or mouth, pulsation of the heart, and a little noise, but not exactly a cry. I could not state exactly how long after birth the child lived. The pulsation of the heart continued for some minutes. After the birth of the child it was given by me to the midwife, Sue Williams. The child was born on the morning of the 15th, I believe, and the mother died on the 17th."

There was no evidence that the child was born prematurely, and the presumption that all persons are normal so far as the natural functions of the body or organs are concerned (10 R. C. L., 879; *Harris v. Laundry Co.*, Anno. Cases, 1913 E. 99), was corroborated by the direct evidence of the defendant, who testified: "As to my wife's lying-in condition, that was normal." Was this evidence sufficient to be submitted to the jury?

All of the authorities agree that if alive for only a moment of time the law is satisfied, but there is some disagreement as to whether this life in the child must be independent of the mother after the cord is severed, or can exist before. The rule and the various views are stated

in 8 R. C. L., 393, as follows: "It will be observed that it is required that the issue be born alive, and whether this condition has been fulfilled is sometimes a difficult question to decide, although there are particular signs which all agree show the fact indubitably one way or the other. 'Born,' as ordinarily understood, means 'brought forth,' and a child is completely born, according to some authorities, when it has been delivered or expelled from and has become external of the mother, whether the umbilical cord has been cut or not, though it has also been insisted that a child is not completely born until it lives by respiration independent of its mother. The burden of proving that the child was born alive rests on him who claims an estate by the curtesy dependent on such birth. Respiration or breathing is certainly evidence of life, but it is not necessary to prove the fact of respiration from actual observation. It has been held that life may exist in a newly born child without proof that the child was observed to have breathed; indeed, it has been held that life may exist for a time without respiration. This is only one of the signs which manifest the existence of life. There are other signs or indications, among which the beating of the heart and the pulsation of the arteries may be considered satisfactory evidence of life in the child. . . . The husband is not disqualified because of interest to testify relative to whether a child was born alive."

His Honor applied the rule most favorable to the plaintiffs by holding that life in the child must be independent of the mother, and charged the jury in accordance with the law as declared by the courts of Delaware. " 'Alive,' as used in defining an element of an estate by curtesy requiring that a child should be born alive, means that it should be alive and have an independent life of its own for some period after delivery. There is no legal presumption in such a case in favor of the separate life of a newly born child, and while respiration or breath is evidence of such life and existence, proof of respiration from actual observation is not necessary to establish the fact. Other indications of life, such as the beating of the heart, and the pulsation of the arteries after the separation of the child from the body of the mother, may be satisfactory evidence of it, because they show the fact that circulation has been established and is maintained and carried on in the body of the child independently of the mother, and proof of such fact sufficiently establishes independent life of the child for the purpose of curtesy. *Cannon v. Killen.* (Del.), 5 Houst., 14." 1 Words and Phrases, 844.

This evidence was accepted by the jury, and was sufficient to sustain a verdict, as the witnesses not only swear the child was born alive, but they also testify to facts, such as the struggle, the noise made, and the pulsation of the heart, which tend to prove life.

The plaintiffs further contend that if there was evidence which ought to have been submitted to the jury upon the question of birth of issue alive, his Honor committed error in refusing to allow a witness offered by the plaintiffs to testify to the declaration of Mrs. Leonora McCoy, mother of the wife of the defendant, who is now dead, that the child was not born alive; but this evidence was properly excluded, because the plaintiffs did not show that the declaration was made *ante litem motam*. 16 Cyc., 1230; Chamberlayne on Evidence, vol. 4, sec. 2919; *Hodges v. Hodges,* 106 N. C., 374.

Declarations of deceased persons are frequently competent on questions of pedigree, but, as stated by *Shepherd, J.,* in the last case, "It is well settled that as preliminary to their admission it must be affirmatively shown that they were made *ante litem motam."*

We must, therefore, deal with the question of the right of the plaintiffs to recover damages for the cutting of timber upon the assumption that the defendant has a life estate in the land in controversy, and determine whether the cutting of the timber under the facts and circumstances in evidence amounted to waste.

Waste at common law was any permanent injury, done or permitted by the tenant of an estate less than a fee, to the inheritance. Mod. Am. L., vol. 5, sec. 323. "A spoil or destruction done or permitted with respect to lands, houses, gardens, trees, or other corporeal hereditaments, by the tenant thereof, to the prejudice of him in reversion or remainder, or, in other words, to the lasting injury of the inheritance." *Norris v. Laws,* 150 N. C., 604. But, "In this country there is a strong inclination to amplify the privileges of the life tenant. As there are in this country such vast tracts of unimproved land which would otherwise be dormant in the hands of the life tenant, public policy required that the doctrine of waste should be liberally construed." Mod. Am. L., vol. 5, p. 324.

As a result of the difference in conditions in England and America, there is less inclination here to attach importance to the changes made in the inheritance, as from woodland to meadow or cultivated land, and the effect upon the inheritance, the purpose and intent with which the act was done, and whether the owner of the estate less than a fee has acted as a prudent owner of a fee would have done, are regarded as better and safer tests of the liability for waste.

In *Thomas v. Thomas,* 166 N. C., 628, *Hoke, J.,* in a valuable and learned opinion, reviews the authorities, and he says, after giving several accepted definitions of waste: "While these definitions are still regarded as sufficiently descriptive, as shown in the decisions referred to and others of like kind here and elsewhere, in adapting the general

principle to conditions existent in this country, the acts which constitute waste have been variously modified until it has come to be established that a tenant, as a general rule, may do what is required for the proper enjoyment of his estate to the extent that his acts and management are sanctioned by good husbandry in the locality where the land is situated, having regard, also, to its condition, and which do not cause a substantial injury to the inheritance."

He then states that the general rule is that standing timber growing on land is considered a part of the inheritance, and that a tenant is never allowed to cut and sell timber merely for his own profit, but there is clear intimation that the tenant for life is not liable for waste in the cutting and sale of timber if done with a present view of making needed repairs, and the proceeds are honestly expended for that purpose and no substantial injury to the inheritance has been caused; and his Honor charged the jury according to this principle.

The evidence offered by the defendant brings him within the rule. He testified: "I have sold some timber from the place. It was mostly old field timber. It had reached its highest development and began to deteriorate. My purpose in having the timber cut was that of making improvements on the buildings, building up fences and tenant houses. The making of these improvements was necessarily for the good of the place at that time. I applied the timber and the proceeds of its sale to the improvement of the buildings, building fences, repairing the old houses, and built some new tenant houses. During my entire occupancy of the place I think there have been built five new houses. These are ordinarily tenant houses that I am speaking of—two and four rooms. Also, some stables and other outhouses have been built during the period of my occupancy."

He also offered the evidence of other witnesses tending to show that the general condition of the land was improved, that the buildings which were placed upon the land were needed for the enjoyment of the inheritance, and that the value of the land was increased by cutting the timber and putting the proceeds in improvements.

This evidence was objected to by the plaintiffs, but was competent unless the cutting and sale of the timber is within itself waste, without regard to the purpose for which it was done, the use made of the proceeds, and whether it was the act of a prudent husbandman, and, as we have seen, the act itself is not determinative of the question.

The plaintiffs also moved for judgment *non obstante veredicto,* but this motion cannot be allowed except where the plea confesses a cause of action and sets up matter in avoidance which is insufficient, although

17—172

true, to constitute a defense or a bar to the action (*Baxter v. Irvin*, 158 N. C., 279), and here the defendant, instead of confessing the cause of action alleged by the plaintiffs, denies it.

We find

No error.