W. JOE TEMPLE AND CARLTON L. TEMPLE v. CLARINE T. CARTER

No. 681SC360

(Filed 5 February 1969)

**1. Estates §§ 3, 5—— timber on life estate**

The general rule is that standing timber growing on land is considered a part of the inheritance, and a life tenant is not allowed to cut and sell the timber merely for his own profit.

**2. Estates § 5—— life estate — cutting timber —— repair of buildings — action for waste**

A life tenant is not liable for waste in the cutting and sale of timber if done with a present view of making necessary repairs to buildings al-

ready on the premises, the proceeds are honestly expended for that purpose and no substantial injury results to the inheritance.

**3. Estates §§ 3, 5— life estate — cutting timber — land used for tree farming — action for waste**

When, prior to the creation of a life estate, the land in which estate is created was used for tree farming from which salable timber was periodically cut and sold, the life tenant may continue the cultivation and sale of the trees for his own profit, such product not being part of the inheritance but part of the annual fruits of the land.

**4. Estates § 5— life estate — action for waste — cutting timber — tree farming**

In an action by remaindermen to restrain a life tenant from removing timber from the land, where defendant alleged she had a right to cut and sell the timber on the ground that the land had been used for tree farming by the testator who created the life estate, issues should have been submitted to the jury as to whether the land is a tree farm and whether it had been a tree farm prior to testator's death.

**5. Trial § 40— issues submitted**

While the form and number of issues ordinarily rest in the sound discretion of the trial judge, the judge is required to submit such issues as are necessary to settle the material controversies raised by the pleadings and to support the judgment.

**6. Estates § 5— life estate — action for waste — cutting timber — repairs to buildings — tree farming**

In an action by remaindermen to restrain a life tenant from removing trees from the land, defendant has not shown justification for cutting timber beyond the amount needed for making repairs to a dwelling on the land where it does not appear that testator who created the life estate conducted a tree farming operation on the property, defendant's evidence showing only that from time to time testator would cut timber in order to procure lumber for repairs to outbuildings, to build a house for one of his children, to sell a little and to use for firewood.

APPEAL by plaintiff from *Cowper, J.,* and a jury, May 1968 Session PASQUOTANK Superior Court.

W. Joe Temple and Carlton L. Temple (plaintiffs) instituted this civil action on 21 September 1966 against their sister, Clarine T. Carter, (defendant) to restrain her from cutting and removing timber from a seven acre portion of a thirty-three acre tract of land.

Plaintiffs and defendant were the children of W. E. Temple who died testate on 31 May 1966. In his will the father devised to the defendant "the use and enjoyment" of three tracts of land "during the term of her natural life", and at her death the three tracts were devised to the plaintiffs "in fee simple". One of the three tracts contained thirty-three acres, seven acres of which consisted of pine

trees with an age of sixty to eighty years. A few hardwood trees were intermingled with the pines. On or about 20 September 1966 the defendant began to cut and remove the timber on this seven acre portion, and at the time of the commencement of this action, approximately 10,000 log feet had been cut. The plaintiff procured a temporary restraining order, which stopped further cutting. The proceeds from the sale of the trees already cut, which amounted to $562.12, were deposited in the office of the clerk of the superior court pending the outcome of this action.

The defendant filed an answer alleging that the homeplace in which she had lived most of her life with her father was located on the thirty-three acre tract; the house was in a bad state of repair; it needed a new roof, new floors and porches, and other repairs, and it was necessary to cut the timber in order to procure proceeds with which to make the needed repairs. It was further alleged that the seven acres involved were suitable only for the cultivation and growing of timber; the father had used this land for purposes of tree farming and had not cultivated it for any other purposes; she proposed to use it in the same manner; the trees, all of which were mature, had been marked for cutting by the North Carolina Forest Service; she intended to cut and remove only those trees which had been so marked and which would be subject to deterioration if allowed to remain standing; and such removal would benefit the tree farm.

The defendant introduced evidence tending to show that the house was heated by woodstoves; a new modern hot water heating system should be installed if there was to be further occupancy and reasonable comfort; and structural repairs, such as flooring, roof and plumbing, were needed. She also introduced evidence tending to show how the father, during his lifetime, had used the seven acre portion; he had periodically cut trees which needed to be cut in order to permit other trees to grow; she proposed to cut all trees which the North Carolina Forest Service had marked and recommended for cutting; ten to fifteen trees per acre were left unmarked; the unmarked trees were to remain standing and to serve as seed trees; and merchantable timber would be reproduced after at least fifty years if properly managed or after sixty to seventy years if improperly managed.

The plaintiffs offered no evidence and it was stipulated that the burden of proof on all issues should be upon the defendant. The court submitted four issues to the jury which were answered as follows:

"(1)    Is the dwelling house occupied by the defendant in need of repairs?

ANSWER:    Yes

(2)    If so, in what amount?

ANSWER:    $3784.00

(3)    Is the defendant guilty of waste in cutting timber?

ANSWER:    No

(4)    If not, is the defendant entitled to cut the timber marked for cutting?

ANSWER:    Yes"

The plaintiffs, among other things, objected and took exceptions to the issues submitted to the jury and this is one of their assignments of error.

*Forrest V. Dunstan, Russell E. Twiford, O. C. Abbott, John S. Kisiday for plaintiff appellants.*

*Leroy, Wells, Shaw & Hornthal by Dewey W. Wells for defendant appellee.*

CAMPBELL, J.

[1, 2]    We are confronted at the outset with the respective rights of a life tenant and the remaindermen to standing timber growing on land.

". . . (T)he general rule is that standing timber growing on land is considered a part of the inheritance, and that a tenant is never allowed to cut and sell timber merely for his own profit, but there is clear intimation that the tenant for life is not liable for waste in the cutting and sale of timber if done with a present view of making needed repairs, and the proceeds are honestly expended for that purpose and no substantial injury to the inheritance has been caused. . . ." *Fleming v. Sexton,* 172 N.C. 250, 90 S.E. 247. To like effect, see *Thomas v. Thomas,* 166 N.C. 627, 82 S.E. 1032.

Dean Mordecai in his valuable treatise on North Carolina real estate law stated:

"The liability of a life tenant for waste has been very greatly modified in modern times until it has come to be established that such a tenant may, as a general rule, do what is required

for the proper enjoyment of his estate to the extent that his acts and management are sanctioned by good husbandry in the locality in which the land is situate, having regard, also, to its condition, which do not cause a substantial injury to the inheritance. He may clear land for the proper enjoyment of his estate, and where he may clear he may sell the timber for his own benefit. It may be that the cutting and selling of the timber for the present purpose of making necessary repairs to buildings already on the premises can, at times, be sustained. But the cutting of timber for sale except as above indicated is doubtless waste — which waste would not be purged by a subsequent application of the proceeds to repair. To justify a sale of timber for needed repairs, it must appear that it was done with the present view of making needed repairs, that the proceeds were honestly expended for such purpose, that no substantial injury was done to the inheritance, and that what was done was 'most for the benefit of all concerned.' " 1 Mordecai's Law Lectures 2d, Ch. XIII, p. 504.

**[3]** In the instant case the defendant attempted to justify the sale of timber on the basis of needed repairs. She also sought to justify the cutting of timber beyond the amount needed for repairs on the theory that since her father had conducted a tree farm operation, she was justified in continuing such operation. This theory may be considered as another exception to the general rule which forbids the cutting of timber by a life tenant.

"This exception has been established principally by modern authorities in favor of the owners of timber estates — that is, estates which are cultivated merely for the produce of salable timber and in which the timber is cut periodically. The reason for the distinction is that since cutting the timber is the mode of cultivation, the timber is not to be kept as part of the inheritance, but part, so to say, of the annual fruits of the land; in these cases, the same kind of cultivation may be carried on by the tenant for life that has been carried on by the settlor on the estate, and the timber so cut down periodically in due course is looked upon as the annual profits of the estate, and therefore goes to the tenant for life." 33 Am. Jur., Life Estates, Remainders, Etc., § 323, p. 825.

"When, prior to the creation of an estate for life, the land in which such estate is created has been used . . . by cutting and selling timber located thereon, then the owner of such estate for life is privileged to continue the use so begun, although such

continuance causes the market value of the interest limited after the estate for life to be diminished." Restatement, Property, § 144, p. 476.

"The rule that a life tenant impeachable for waste may not cut timber for commercial purposes is subject to an exception in favor of the life tenant of a timber estate which is cultivated merely for the production of salable timber and from which the timber is cut periodically." 51 A.L.R. 2d, § 10, p. 1380.

"But there has grown up an exception to this rule originating in England, and adopted in some states in this Country, and apparently disapproved by none who have had occasion to treat it. The exception applies to estates which were cultivated by the settlor and this custom has continued after his death, to produce salable timber where the timber is cut periodically. The reason assigned is that protecting and cutting timber periodically and pursuing a system of reforestation is a mode of cultivation, and such product is not then a part of the inheritance but part of the so-called annual fruits of the land; and in such cases the same kind of cultivation may be carried on by the tenant for life that has been carried on by the settlor; and the timber so cultivated and cut periodically is looked upon as annual profits of the estate when reforestation is pursued. . . ." *First Nat. Bank of Mobile v. Wefel*, 252 Ala. 212, 40 So. 2d 434.

Compare *Lee & Bradshaw v. Rogers*, 151 Ga. 838, 108 S.E. 371, and *Poole v. Union Trust Co.*, 191 Mich. 162, 157 N.W. 430.

In North Carolina the continuation by the life tenant of a commercial use of timber is recognized. *Carr v. Carr*, 20 N.C. 317.

**[4, 5]** The right of the defendant to apply this exception in the instant case was not determined by the issues submitted to the jury. The controversy presented by the pleadings was whether this particular seven acre portion was a tree farm and whether it had been a tree farm prior to the death of the father, which the life tenant would have a right to continue to cultivate. This raised an issue of fact.

"Issues arise upon the pleadings only. An issue of fact arises on the pleadings whenever a material fact is maintained by one party and controverted by the other. Ordinarily the form and number of issues in a civil action are left to the sound discretion of the judge. '. . . it is the duty of the Judge, either of his own motion or at the suggestion of counsel, to submit such issues as are necessary to settle the material controversies aris-

ing in the pleadings, and . . . in the absence of such issues, or admissions of record equivalent thereto, sufficient to reasonably justify, directly or by clear implication, the judgment rendered therein, this Court will remand the case for a new trial.' " (citations omitted) *Rubber Co. v. Distributors*, 253 N.C. 459, 117 S.E. 2d 479.

[6]    The evidence in the instant case, when considered in the light most favorable to the defendant, fails to show that this life tenant comes within the exception to the general rule since the evidence does not reveal that the father conducted a tree farming operation on this seven acre portion. The evidence shows that from time to time the father would cut timber in order to procure lumber for repairs to outbuildings, to build a house for one of his children, to sell a little and to cut for firewood purposes. The evidence does not show that the father periodically cut trees in the sense of cultivating a timber crop. The evidence further shows that it would take a minimum of fifty years to reproduce similar timber under favorable forestry practices and from sixty to seventy years if good forestry practices were not followed. Under this evidence it is not proper to say that the remaindermen would not be adversely affected by the cutting of the marked trees or that no substantial injury to the inheritance would be caused. Therefore, the defendant should have been restricted to cutting only so much of the timber or to using only so much of the proceeds deposited in the office of the clerk of the superior court as was needed to make the necessary repairs to the dwelling.

New trial.

MALLARD, C.J., and MORRIS, J., concur.