JAMES A. FAGAN *vs*. PEOPLE'S SAVINGS & LOAN ASSOCIATION.

55  437
61  287

Argued Nov. 20, 1893.   Affirmed Dec. 7, 1893.

No. 8441.

**Mortgage construed.**

A certain mortgage, executed by a borrowing member to a so-called "building association," construed, and *held* not to be security for "dues" or "subscriptions" on stock.

**Disposition of surplus proceeds of sale, on foreclosure.**

Where a mortgagee forecloses under a power of sale, and in his notice claims as due an amount greater than is allowed by the terms of the mortgage, and bids in the property for that amount, he is liable to the mortgagor or his assigns for the excess; following former decisions. Where land, which is subject to two mortgages, is sold on the first, the lien of the second is transferred from the land to the surplus of the proceeds of sale after satisfying the first mortgage; and the second mortgagee is entitled to such surplus to the extent necessary to satisfy his mortgage, although by its terms his debt is not yet due.

Appeal by defendant, the People's Savings and Loan Association, from an order of the District Court of Hennepin County, *Seagrave Smith*, J., made March 13, 1893, denying its motion for a new trial.

On March 14, 1890, Dora Hogan mortgaged to the People's Building and Loan Association of Minneapolis, her property in that city near the corner of Third Street and Eighth Avenue South, to secure the performance of her contract with it. She afterwards on March 21, 1890, gave a second mortgage on the same property to the plaintiff, James A. Fagan, to secure the payment of her note to him for $1,250 and interest due three years thereafter. The name of defendant was subsequently changed to People's Savings & Loan Association and it foreclosed its mortgage June 22, 1891, by sale of the property under a power in the mortgage pursuant to 1878 G. S. ch. 81. The defendant bid in the property at the sale for $18,606.90. The notice of sale was dated May 8, 1891, and stated there was then claimed to be due $18,382.10. The costs and expenses of the sale including $200 attorneys fees were $224.75. Plaintiff claimed that the sum for which the property sold exceeded the amount due to the defendant by $1,250, and he brought this action August 1, 1892, to recover this surplus. The issues were tried February 13, 1893, and,

by direction of the Judge, the jury returned a verdict for plaintiff for $893.77 with interest on that sum from the day of the foreclosure sale. The defendant moved for a new trial. Being denied, it appeals.

*Charles M. Cooley* and *Charles G. Van Wert*, for appellant.

*F. B. Wright* and *Brooks & Hendrix*, for respondent.

MITCHELL, J. Dora Haugen executed to defendant (then called the People's Building & Loan Association) a first mortgage on certain real estate, and then executed a second mortgage on the same property to the plaintiff. Default having been made in the conditions of the first mortgage, defendant sold the premises under a power, itself being the purchaser at the sale. Plaintiff brought this action to recover an alleged surplus of the proceeds of sale over and above the amount due on defendant's mortgage, claiming that he is entitled to the same as second mortgagee.

1. The first question is whether there was any "surplus"; that is, whether the amount bid by the defendant exceeded the amount due on its mortgage. The defendant is a corporation organized under 1878 G. S. ch. 34, title 2, and claims to be a "building association;" but its articles of association and by-laws disclose that, while it has adopted some of the features of building associations, it is rather what its present name indicates,—a savings and loan association. As the question how much was due to the defendant must be settled by the terms of the mortgage itself, there being nothing in the articles of association or by-laws which, by being referred to in the mortgage, affects its construction, it is not necessary to refer to either the articles or the by-laws, except two or three provisions of the latter, which may throw light on the meaning of some of the provisions of the mortgage.

The by-laws provide that each shareholder in class one (1) shall pay fifty eight (58) cents each month on each share of stock owned by him until such share shall mature, or arrive at the par value of $100; also that if he shall be in default in the payment of any of these installments for more than three days, he shall pay a certain specified fine on each share for every month thereafter while thus in default. They also provide that any shareholder borrowing money from the association shall give his non-negotiable note for the same,

secured by mortgage, and shall until his loan is repaid, or his stock matures, pay, in addition to the monthly installments on his stock, a monthly premium of the number of cents per share bid by him on each share for his loan, and interest on the loan at six per cent. per annum. They also provide that any borrowing shareholder may at any time, when not in default, on thirty days' notice, release his mortgage by repaying his loan and the expense of satisfying the mortgage.

Mrs. Haugen, being the owner of 150 shares of stock of the association of class 1, of the "par" or "paid-up" value of $15,000, made a loan of the association of $15,000, and executed a contract, of which the following are the material provisions:

"Received of the People's Building and Loan Association, $15,000, as a loan on 150 shares of stock owned by me in said association. And I agree to pay to said association on the 14th day of each month $274.00, which shall be applied as follows: *First.* To the payment of any fines or other assessments made against me in pursuance of the by-laws of the association. *Second.* To the payment of the premiums for preference due on said loan, amounting to $112.50 per month. *Third.* To the payment of the interest due on said loan, amounting to $75 per month. *Fourth.* The balance of said payments shall be credited as dues on said stock. Said payments shall be continued until the dues credited on said stock, together with the dividends thereon, shall equal the amount of the loan. Should I fail for six months to pay said monthly payments, then the whole amount of said loan shall, at the option of said association, at once become due and payable."

Haugen also executed to the association the mortgage referred to, the conditions of which, after setting out the contract, were that, if default should be made in the payment of said sums, or any part thereof, at the time and manner specified in the contract, the association was authorized to sell the mortgaged premises at auction, "and out of the moneys arising from such sale to retain the principal, interest, and premiums which shall then be due on said contract, and all fines and penalties due and payable in accordance with the by-laws of said association, * * * and pay the surplus, if any, to the mortgagor, her heirs, representatives, or assigns."

In determining how much was due on the mortgage at the date

of the foreclosure sale, of course the question is, what was it security for? and upon this it seems to us that the controlling provision of the mortgage is the one last quoted,—as to what the mortgagee was authorized to retain out of the proceeds of sale. The controversy in the case is as to whether the mortgage was security for the monthly "dues" of 58 cents per share on the stock. It seems to us that the express terms of the mortgage conclusively settle this in the negative. All that the mortgagee was authorized to retain out of the proceeds of sale were the principal, interest, and premiums then due, and all fines and penalties due and payable according to the by-laws. "Dues" or "subscriptions" on the stock are not included.

Originally and legitimately a "loan" by a building association to a member was merely an advanced payment to him of the par or mature value of his stock. No repayment of the "loan" was provided for or anticipated, and the mortgage was merely security for (1) the payment of stock "dues" during the existence of the association, or of that particular series of stock, which, if paid, would raise the value of the stock to an amount equal to the sum advanced; (2) interest on the advance during the interval between the date of the advance and the maturity of the stock, the "premium" or "bonus" bid by the advanced member being usually taken out of the "advance." Under such a mortgage the "principal" secured would be the stock "dues," and, in case of default on part of the mortgagor, the amount presently due on the mortgage, aside from interest on the advance, would be the amount of stock dues, not merely to the date of sale, but up to the expiration of the duration of the association or of that particular series of stock. The reasons why the mortgage should so provide in such a case are quite manifest. The "borrowing" member having been paid the matured value of his stock in advance, and there being no provisions for the repayment of this "advance," it is quite evident that to protect the association it should have security for the payment of stock "dues" up to the date of the maturity of the stock; for it is the payment of these dues which is relied on to ultimately raise the value of the stock so as to equal the sum advanced.

But no such reasons existed in the present case, and the mortgage is entirely different in its provisions. In case of a default on part of the mortgagor, the association on foreclosure obtains repay-

ment of the principal sum loaned, and all interest and premiums (which is but another name for interest) up to the time of sale, together with all fines and penalties then due the association.

No reason exists, in the nature of things, why, under such circumstances, a borrowing member shall give security for the payment of stock "dues" or "subscriptions," any more than a nonborrowing member.   The same may be said of "fines" and "penalties," but it is enough that as to them the mortgage so provides.

The mistake of some writers on this subject is that they start out having in mind what a building association "loan" originally was, and what a mortgage, in such a case, secured, and then interpolate the same terms into all modern so-called "building asociation mortgages," regardless of the terms of the contract.   But in every case the question is not, what contracts did such associations once make? or, what legitimately ought to be the provisions of such contract? but, what contract have the parties in fact made? The mortgage in this case not being security for "dues," and the defendant having no right to retain them out of the proceeds of the sale of the premises, it follows that the amount bid at the sale was in excess of the amount due on the mortgage according to its terms in a sum equal to the amount of the verdict.

2.   Relying on a line of decisions commencing with *Bidwell* v. *Whitney,* 4 Minn. 76, and on *Dickerson* v. *Hayes,* 26 Minn. 100, (1 N. W. 834,) it is contended that plaintiff, having, without objection, suffered a sale by foreclosure for the amount claimed in the notice, cannot now recover the alleged surplus; that he should have enjoined the sale.   But we have repeatedly explained, and especially in *Seiler* v. *Wilber,* 29 Minn. 307, (13 N. W. 136,) that these cases have no application to a case like the present.

The doctrine of *Bidwell* v. *Whitney,* and of cases following it, only applies where the amount claimed to be due is according to the express terms of the contract, although more than the law would enforce.   The basis of these decisions is that, if a man expressly agrees to pay more than the law will enforce against him, he may, if he chooses, abide by the terms of the contract, and that he does so by remaining silent while the other party is enforcing the contract according to its terms.   *Dickerson* v. *Hayes* merely holds that where the party is asking equitable relief by setting aside the sale,

or by allowing him to redeem by paying less than the amount bid,. he must show an excuse for not enjoining the sale.

But we have invariably sustained the right of the mortgagor or his assigns to recover the amount bid, although claimed in the notice, in excess of the amount due on the mortgage according to its terms. *Bennett* v. *Healey,* 6 Minn. 240; *Bailey* v. *Merritt,* 7 Minn. 159; *Spottswood* v. *Herrick,* 22 Minn. 548; *Seiler* v. *Wilber,*. *supra.*

In such a case the mortgagee's only escape from liability for the excess is to show some ground, such as excusable mistake, entitling him to equitable relief by having the sale set aside, and a new foreclosure ordered. See *Lane* v. *Holmes, ante,* p. 379, (57 N. W. 132.)

3. It is further contended that plaintiff is not entitled to recover this surplus, because, by its terms, the debt secured by his mortgage is not yet due. But he is not suing on the debt, but to recover the proceeds of his mortgage security. When land is sold on a first mortgage, which is subject to a subsequent lien, the lien is transferred from the land to the surplus money. The proceeds of the sale, after satisfying the first mortgage, stand in place of the equity of redemption to those who had title to or lien upon it. The right to this surplus passes to the grantee or assignee of the mortgagor by a conveyance of or mortgage upon the equity of redemption; and the court will always direct the application of the money according to the rights of the parties as they existed previous to the alteration of the estate. In case of future installments to become due on the first mortgage; or, in case of a second mortgage, not due, the mortgagees would be entitled to the surplus to the extent necessary to pay their mortgages in full. If the debt was on interest, that would be saved; if not on interest, a deduction would be made by way of rebate of interest. Our statute, (1878 G. S. ch. 81, § 4,) which is but declaratory of what the law has always been, expressly provides for this being done in case of future installments on the same mortgage. But the principle is the same in the case of second mortgages. *Barber* v. *Cary,* 11 Barb. 549.

Although not necessary, perhaps the safer practice in such cases is for the second mortgagee to join the owner of the equity of redemption as a party defendant. Undoubtedly such owner might

intervene, and in a proper case the defendant holding the surplus might require him to be interpleaded. But no such question is involved in this case.

It can hardly be necessary to say in conclusion that it does not concern defendant whether plaintiff's mortgage was without consideration or not, and hence that the court was right in excluding evidence as to the fact.

Order affirmed.

(Opinion published 57 N. W. Rep. 142.)