IN THE MATTER OF THE FORECLOSURE OF THE DEED OF TRUST OR MORTGAGE OF CASTILLIAN APARTMENTS, INC.

No. 105

(Filed 31 July 1972)

1. **Mortgages and Deeds of Trust § 33— surplus from foreclosure sale — attachment of junior lien**

   A second lien deed of trust attached to the surplus arising from a foreclosure sale under the first lien deed of trust.

2. **Usury § 1— effect of usury**

   Where a loan evidenced by a note has been held usurious, the usury invalidated only those provisions of the note providing for the payment of interest.

3. **Mortgages and Deeds of Trust § 33— foreclosure sale — surplus — right of holder of junior lien**

   Where a note secured by a second lien deed of trust does not bear interest because the loan evidenced by the note has been declared usurious, and monthly payments on the principal are not in default, the holder of the note secured by the second lien deed of trust is not entitled to have the surplus arising from a foreclosure sale under the first lien deed of trust immediately disbursed to it for application and credit on the principal of the note.

4. **Mortgages and Deeds of Trust § 10— waste — default on senior lien**

   A default on which the foreclosure of a first lien deed of trust was based does not constitute "waste" within the meaning of a provision of a second lien deed of trust that the indebtedness secured thereby is due and payable if the debtor permits "any waste or injury to such extent as to impair the value of the premises as security," since the word "waste" refers to destruction, impairment or injury to the property itself.

APPEAL by National Mortgage Corporation from *Long, J.,* November 15, 1971 Civil Session of ORANGE Superior Court,

certified, pursuant to G.S. 7A-31, for initial appellate review by the Supreme Court.

This special proceeding was instituted by petitioner, National Mortgage Corporation (Mortgage Corporation), before the Clerk of the Superior Court of Orange County under G.S. 45-21.32 to recover surplus funds paid into the office of the clerk as the result of the foreclosure of a deed of trust. The respondents are Jonas W. Kessing Company (Kessing Company), Jonas W. Kessing (Kessing) and Alice H. Kessing (Mrs. Kessing).

The subject of controversy is $118,659.98 deposited with the clerk as authorized by G.S. 45-21.31(b), this being the surplus realized from the foreclosure of a *first lien* deed of trust on certain real estate in the Town of Chapel Hill, Orange County, N. C., referred to hereafter as the Castillian Apartments property.

Mortgage Corporation is the owner and holder of a note for $250,000.00, which was executed by Kessing Company as maker and by Kessing and Mrs. Kessing as endorsers and secured in part by a *second lien* deed of trust on the Castillian Apartments property. The principal of this $250,000.00 note is payable in monthly installments of $500.00, beginning May 1, 1970, and continuing until June 30, 1974, when the balance of principal is payable.

In *Kessing v. Mortgage Corp.*, 278 N.C. 523, 180 S.E. 2d 823 (1971), this Court held that the loan evidenced by the $250,000.00 note was usurious; that all interest thereon was forfeited; and that, on account of payments theretofore made as interest, $25,000.00 was to be credited on principal.

There has been no default in respect of the payment of any monthly installment of principal. Neither the $250,000.00 note nor the deed of trust constituting security therefor contains any provision for the accelleration of the maturity date of the indebtedness because of foreclosure of the *first lien* deed of trust or default in the payment of any obligation which it secured.

The present unpaid principal balance on the $250,000.00 note substantially exceeds the $118,659.98 deposited with the clerk.

The court below denied Mortgage Corporation's petition that the $118,659.98 be disbursed to it *forthwith* for application and credit on the principal of the $250,000.00 note. It further ordered the Clerk of the Superior Court, pursuant to G.S. 2-55(6), to invest the net surplus foreclosure fund of $118,-659.98, after payment of an attorney's fee of $300.00 to counsel for respondents as authorized by G.S. 45-21.32(d), in a certificate of deposit, consistent with the stipulation of counsel filed herein; and, until otherwise ordered by the court, to transmit to Kessing Company all interest income realized therefrom. The court taxed the costs of this proceeding against Mortgage Corporation.

A stipulation was entered as to what would constitute a proper investment by the clerk of the surplus fund.

Mortgage Corporation excepted to the judgment and appealed.

*Manning, Allen & Hudson, by James Allen, Jr., and Bryant, Lipton, Bryant & Battle, by Donald G. Lawrence, for appellant.*

*Newsom, Graham, Strayhorn, Hedrick & Murray, by Josiah S. Murray III, for appellees.*

BOBBITT, Chief Justice.

"Surplus money arising upon a sale of land under a decree of foreclosure stands in the place of the land itself in respect to liens thereon or vested rights therein. They are constructively, at least, real property, and belong to the mortgagor or his assigns." 3 Jones on Mortgages 685, § 2164 (8th ed., 1928). Accord: 59 C.J.S. *Mortgages* 1032, § 596; 55 Am. Jur. 2d *Mortgages* 808, § 931.

[1] Mortgage Corporation's *second lien* deed of trust attached to the surplus arising from the foreclosure sale under the first lien deed of trust. *Markey v. Langley*, 92 U.S. 142, 155, 23 L.Ed. 701, 705 (1876); *W. A. H. Church, Inc. v. Holmes*, 60 App. D.C. 27, 46 F. 2d 608 (1931); *Cowan v. Stoker*, 100 Utah 377, 115 P. 2d 153 (1941); *Paroni v. Quick*, 211 A. 2d 765 (D.C. App. 1965).

The surplus fund of $118,659.98 takes the place of the *second lien* deed of trust *as security* for the $250,000.00 note. Respondents concede that Mortgage Corporation has and will

continue to have an equitable lien on the principal of this surplus fund until the debt due Mortgage Corporation has been paid. However, the $250,000.00 note does not bear interest and no monthly installment of principal is in default.

[2] Usury invalidated only those provisions of the $250,000.00 note providing for the payment of interest. *Wilkins v. Finance Co.*, 237 N.C. 396, 403, 75 S.E. 2d 118, 123 (1953). According to the note and deed of trust, no portion of the principal becomes due prior to June 30, 1974, except the monthly installments of $500.00 each.

[3] Ordinarily, the impounding of the surplus pending the maturity of a second lien deed of trust would be of no benefit to the persons obligated to pay the debt secured thereby. The interest received on a certificate of deposit would be insufficient to cover the interest on the note. The unique feature of the present case is that the $250,000.00 note has been stripped of all obligations relating to payment of interest. Under present conditions, the income on a certificate of deposit for the amount of the surplus fund would exceed the amount necessary to make the monthly payments on principal. More important, the crediting of these monthly payments on the principal will reduce substantially the amount of the unpaid principal on June 30, 1974. The receipt by Mortgage Corporation of the surplus fund prior to the maturity of respondents' obligations in respect of the payment of principal would nullify substantially the adverse consequences of its usurious transaction.

Mortgage Corporation cites *Fagan v. People's Sav. & Loan Ass'n*, 55 Minn. 437, 57 N.W. 142 (1893), which involved the following: One Haugen executed two mortgages on the same real estate, a first mortgage to the defendant (People's Savings & Loan Association) and a second mortgage to the plaintiff (Fagan). Default having been made in the conditions thereof, the first mortgage was foreclosed and the defendant became the purchaser. The plaintiff alleged that the purchase price exceeded the amount due on the first mortgage debt and that the amount of this excess should be paid to it for application on the second mortgage debt. The court determined that there was an excess and that Fagan was entitled thereto notwithstanding his mortgage debt was not then due. The court called attention to a Minnesota statute (Minn. Gen. Stats. of 1878, Ch. 81, § 4) which provided in part that, upon foreclosure of a real estate

mortgage which secured a debt payable in installments, some due and others not due, "the proceeds of such sale shall, after satisfying the interest, portion or instalment of the principal due, with interest and costs of sale, be applied towards the payment of the residue of the sum secured by said mortgage, and not due and payable at the time of such sale; and if such residue does not bear interest, such application shall be made with a rebate of the legal interest for the time during which the residue shall not be due and payable; and the surplus, if any, shall be paid to the mortgagor, his legal representatives or assigns." The court held that this statutory principle applied to the disbursement of the surplus resulting from the foreclosure of the first mortgage to the payment of a second mortgage debt which was not due. These factual distinctions are noted: (1) Nothing suggests that the second mortgage debt did not bear interest; and (2) the owner of the equity of redemption was not a party. The controversy was between the defendant, the first mortgagee, who had no pretense of right to retain the excess, and the plaintiff, the second mortgagee.

Mortgage Corporation cites *Nielsen v. Heald,* 151 Minn. 181, 186 N.W. 299 (1922), where the subject property was subject to the lien of first and second mortgages and also asserted lien claims in connection with the construction of an apartment building. Default had occurred in the payment of the debts secured by *both* mortgages. The evidence disclosed that the debts secured by the mortgages plus the amount of the undetermined lien claims exceeded the value of the mortgaged property. Under these circumstances the Supreme Court of Minnesota upheld the appointment of a receiver to take charge of the property and collect the rents and profits during the pendency of the action.

Mortgage Corporation cites *Pioneer Credit Corporation v. Bloomberg,* 323 F. 2d 992 (1st Cir. 1963), where a surplus fund resulting from the foreclosure of a senior mortgage was the subject of conflicting claims by the mortgagor and by the holder of a junior mortgage. Each claimed the entire fund, the mortgagor basing his claim on the ground that the debt secured by the second mortgage debt was not due. In rejecting this contention, the court held, *based on a Massachusetts statute* (Mass. Gen. Laws 1958, Ch. 183, § 20), that the entire indebtedness secured by the junior mortgage had become due because of

the mortgagor's failure to perform conditions of the prior mortgage. If the court had allowed the mortgagor's claim, the owner of the indebtedness secured by the second mortgage would have lost his security. Nothing suggests that the second mortgage debt did not bear interest.

Although cited by Mortgage Corporation, we find nothing in *Gorrin v. Higgins*, 73 N.J. Super. 243, 179 A. 2d 554 (1962), which significantly supports its present contention.

[4] Mortgage Corporation's second lien deed of trust provides in substance that the indebtedness secured thereby is to become due and payable if Kessing Company permits "any waste or injury to such extent as to impair the value of the [premises] as security." We have not overlooked Mortgage Corporation's contention that the default on which the foreclosure of the first lien deed of trust was based constituted "waste" within the meaning of this provision. However, we think the word "waste" refers only to waste in the traditional sense of destruction, impairment or injury to the property itself. *Thomas v. Thomas*, 166 N.C. 627, 629, 82 S.E. 1032, 1033 (1914), and cases cited.

The record contains no evidence of the identity of the purchaser of the Castillian Apartments property at the foreclosure sale under the first lien deed of trust or of the value of the Castillian Apartments property when the foreclosure sale was made. Assuming the price paid by the purchaser was the fair market value of the property, Mortgage Corporation's position in respect of security has not been impaired by the foreclosure. After June 30, 1974, or earlier if respondents default in the payment of any monthly installment of principal, it may proceed against respondents personally and against any security it may have.

[3] Having concluded that Mortgage Corporation is not at present entitled to the principal of the surplus fund of $118,-659.98, the order of the court below is affirmed.

Affirmed.