MARK A. SPROUSE AND WIFE, BESSIE A. SPROUSE, WILLIAM F. POTTS, JR.,
SUBSTITUTE TRUSTEE UNDER DEED OF TRUST RECORDED IN THE BUNCOMBE COUNTY
PUBLIC REGISTRY IN BOOK 927 AT PAGE 727; AND MID-STATE HOMES, INC. v.
THE NORTH RIVER INSURANCE COMPANY

No. 8528SC1198

(Filed 17 June 1986)

1. **Insurance § 115; Mortgages and Deeds of Trust § 29— fire insurance policy—
   foreclosure sale—rights of parties**

    There was no merit to defendant's contention that because a foreclosure
    sale had taken place and no upset bid had been filed, any insurable interest of
    plaintiff mortgagors had been extinguished and they could not recover, since
    the only rights which are "fixed" pursuant to N.C.G.S. § 45-21.29A upon ex-
    piration of the 10-day period for filing upset bids are the contractual rights of
    the high bidder to delivery of the deed upon tender of the purchase price and
    of the trustee to hold the bidder liable for that price; until the purchase price
    is paid and the deed delivered, the mortgagor retains some interest in the
    property; and the Uniform Vendor and Purchaser Risk Act, N.C.G.S. § 39-36
    *et seq.*, places the risk of loss with the vendors pending the high bidder's ac-
    quiring title or possession.

2. **Insurance § 115— fire insurance—assignment of mortgagee's interest—no no-
   tice to insurer—insurable interest of assignee**

    Where the named mortgagee in a fire insurance policy transferred its
    mortgagee rights to a third party prior to a fire, the assignee owned an in-
    surable interest in the property at the time of the fire and was not barred
    from recovery for failure to notify defendant insurer that it, rather than the
    named mortgagee, was mortgagee at the time of the fire, since there was no
    express language in the policy stating plainly that the policy would become in-
    valid upon change of mortgagee without notification.

3. **Mortgages and Deeds of Trust § 25— foreclosure sale—obligation of trustee to
   enforce sale—fire damage to property—insurer's action for indemnity against
   trustee improper**

    In an action to recover on a fire insurance policy where a foreclosure sale
    had taken place and no upset bid had been filed prior to the fire, defendant in-
    surer was not entitled to summary judgment on its claim for indemnity against
    the trustee under a deed of trust on the subject property where defendant
    claimed that the trustee failed to enforce the foreclosure sale, since pursuant
    to N.C.G.S. § 39-39, the trustees could not have enforced the sale to the high
    bidder and therefore could not be liable to defendant for his failure to do so; it
    was within the power of the trustee to postpone the foreclosure sale or resale
    pending resolution of the insurance claim and was therefore equally within his
    power to abandon or withdraw the sale proceeding, the high bid of which was
    unenforceable, particularly since this was with the consent of the mortgagee at
    whose request the sale was commenced in the first place and with the consent
    of the mortgagors; and summary judgment did not defeat defendant's right to

subrogation against the high bidder because the trustee could not compel performance on the high bid and defendant therefore had no better right.

**4. Attorneys at Law § 7.5— trustee in foreclosure sale—fire insurer's action for indemnity—absence of justiciable issue—award of attorney fees to trustee proper**

In an action to recover on a fire insurance policy when there had been a foreclosure sale, the trial court properly awarded attorney fees to the trustee under a deed of trust on the subject property where there was a complete absence of a justiciable issue in defendant's counterclaim against the trustee for failure to enforce the foreclosure sale, since defendant's contention that the trustee was required to enforce rested solely on a strained construction of an isolated sentence in N.C.G.S. § 45-21.29A, ignored the substantial discretionary powers of the trustee, ignored the existence of the Uniform Vendor and Purchaser Risk Act, and was unsupported by any N. C. law; defendant never suggested how, if at all, any action or inaction by the trustee justified its total refusal to honor any claims when the amount due on the policy exceeded the amount of the mortgage debt; and defendant never alleged that the trustee acted in anything other than a good faith manner. G.S. 6-21.5.

APPEAL by defendant from *Snepp, Judge.* Judgments entered 23 July 1985 and order allowing attorney fees entered 12 August 1985 in Superior Court, BUNCOMBE County. Heard in the Court of Appeals 8 April 1986.

This is an action by plaintiff homeowners and mortgagees, joined by the trustee under the deed of trust, to recover on an insurance policy for loss of home in fire.

Plaintiffs Sprouse ("the Sprouses") owned a home in Fairview, North Carolina. They executed a note and deed of trust against their home in favor of plaintiff Mid-State Homes, Inc. ("Mid-State"). In February 1983 the Sprouses obtained homeowners' insurance with defendant North River Insurance Company. The policy declaration listed the Sprouses as the named insureds and Mid-State as the "first mortgagee" loss payee. No other mortgagees were listed.

Under the policy, defendant agreed to cover the property against fire loss. The policy contained language limiting defendant's liability to those with an insurable interest in the property:

Even if more than one person has an insurable interest in the property covered, we shall not be liable:

a. to the *insured* [by the terms of the policy, the Sprouses] for an amount greater than the *insured's* interest; nor

b. for more than the applicable limit of liability. [Emphasis in original.]

The policy also contained a "Mortgage Clause":

The word "mortgagee" includes trustee.

If a mortgagee is named in this policy, any loss payable under [the relevant coverage] shall be paid to the mortgagee and you [the Sprouses], as interests appear. If more than one mortgagee is named, the order of payment shall be the same as the order or precedence of the mortgages.

If we [defendant] deny claim, that denial shall not apply to a valid claim of the mortgagee, if the mortgagee:

a. notifies us of any change in ownership, occupancy or substantial change in risk of which the mortgagee is aware;

b. pays any premium due under this policy on demand if you have neglected to pay the premium;

c. submits a signed, sworn statement of loss within 60 days after receiving notice from us of your failure to do so. Policy conditions relating to Appraisal, Suit Against Us and Loss Payment apply to the mortgagee.

If the policy is cancelled or non-renewed by us, the mortgagee shall be notified at least 10 days before the date cancellation or non-renewal takes effect.

If we pay the mortgagee for any loss and deny payment to you:

a. we are subrogated to all the rights of the mortgagee granted under the mortgage on the property; or

b. at our option, we may pay to the mortgagee the whole principal on the mortgage plus any accrued interest. In this event, we shall receive a full assignment and transfer of the mortgage and all securities held as collateral to the mortgage debt.

Subrogation shall not impair the right of the mortgagee to recover the full amount of the mortgagee's claim.

The policy did not contain any provision expressly avoiding liability or requiring notification in the event the mortgagee assigned its interest in the insured property.

In March 1983 plaintiff Potts ("Potts") was substituted for the original trustee on the deed of trust. In September 1983, Mid-State assigned the note and deed of trust to Jim Walter Homes, Inc. ("Jim Walter"), without notice to defendant. Mid-State and Jim Walter are both Florida corporations. All directors of Mid-State are also directors of Jim Walter, and the two corporations share many of the same officers.

In October 1983 Potts as trustee began a foreclosure proceeding on the Sprouse property. A foreclosure sale took place on 13 December 1983, with Jim Walter making the high bid. Potts filed the report of sale the same day, and no upset bid was made within the ten day period allowed by law. The Sprouses remained in possession, but were removing their belongings, when, after the ten day period had expired, the house was destroyed by fire. Mid-State notified defendant immediately of the loss, but received only a notice of cancellation addressed to it as mortgagee.

The subject property was never conveyed to Jim Walter. Instead, Jim Walter, the Sprouses and Potts joined in a dismissal of the foreclosure action in October 1984. The Sprouses simultaneously assigned their beneficial interest in any insurance proceeds to Mid-State. Jim Walter also made a similar assignment along with an assignment of the note and deed of trust.

Plaintiffs (the Sprouses, Potts, and Mid-State) commenced this action on 31 October 1984 seeking to recover under the policy for the fire loss. Defendant denied liability and set up a counterclaim for indemnity from Potts, on the ground that he failed to enforce the foreclosure sale. Both sides moved for summary judgment. The court allowed plaintiffs' summary judgment motions, denied defendant's, dismissed the counterclaim, and ordered defendant to pay Potts' attorney fees. Defendant appeals.

*Van Winkle, Buck, Wall, Starnes and Davis, by Roy W. Davis, Jr. and Larry C. Harris, Jr., for defendant-appellant.*

*Barnes & Tomberlin, by W. Faison Barnes and Richard H. Tomberlin, for plaintiff-appellee Mid-State Homes, Inc.*

*Robin S. Lymberis for plaintiff-appellee William F. Potts, Jr.*

*Stephen Barnwell for plaintiff-appellees Sprouse.*

EAGLES, Judge.

Plaintiffs' claim for punitive damages remains to be adjudicated, and the trial court did not certify that there was no just reason for delay. Though the appeal is technically interlocutory, *see* G.S. 1A-1, R. Civ. P. 54(b), in our discretion we proceed to the merits.

This case is here on appeal from summary judgment. Summary judgment is appropriate where there is no genuine issue as to any material fact, and the case presents only questions of law. *Thomas v. Ray*, 69 N.C. App. 412, 317 S.E. 2d 53 (1984). Since in ruling on summary judgment motions the trial court rules only on questions of law, the order is fully reviewable on appeal. *N.C. Reins. Facility v. N.C. Ins. Guaranty Ass'n*, 67 N.C. App. 359, 313 S.E. 2d 253 (1984). There does not appear to be any dispute as to the facts here.

I

[1] Defendant's first assignment of error challenges the grant of summary judgment in favor of the Sprouses. Defendant contends that because the foreclosure sale had taken place and no upset bid had been filed, any insurable interest of the Sprouses had been extinguished and they cannot recover.

A

Defendant relies on the statutes governing foreclosure under power of sale, G.S. Chapter 45, in particular G.S. 45-21.29A:

> No confirmation of sales of real property made pursuant to this Article shall be required except as provided in G.S. 45-21.29(h) for resales. If in case of an original sale under this Article no upset bid has been filed at the expiration of the

10-day period, as provided in G.S. 45-21.27, the rights of the parties to the sale become fixed.

The fixing of rights, argues defendant, operates to terminate any interest of the mortgagor, in this case the Sprouses. We disagree.

The instant case is not a foreclosure by judicial action. G.S. 45-21.2. Rather, the sale here took place under contractual powers granted the trustee, made subject to certain statutory constraints of due process imposed by the General Assembly. *In re Burgess*, 47 N.C. App. 599, 267 S.E. 2d 915, *appeal dismissed*, 301 N.C. 90 (1980). Doubts as to the interpretation of the statutes should be resolved not in favor of the unrestricted power of the trustee or the automatic loss of equitable title, but in favor of preserving the equitable title of the mortgagor. *Spain v. Hines*, 214 N.C. 432, 200 S.E. 25 (1938).

The deed of trust results in legal title to the property being in the trustee. In a foreclosure title remains in the trustee until he conveys it to the high bidder. Title does not pass before the conveyance. G.S. 22-2. The legislature recognized that until actual transfer of title, the high bidder may default on the obligation to pay the bid price; in that case, because he continues to hold title, the trustee may (but is not required to) hold a resale. G.S. 45-21.30(c). The high bidder is not entitled to an order of possession until payment of the purchase price. G.S. 45-21.29(k)(3). This is consistent with the general rule: "The sale is executed only by the delivery of the deed. The prior proceedings amount merely to a contract of sale." 10 G. Thompson, Real Property Section 5185 at 258 (J. Grimes repl. ed. 1957). Therefore the only rights that are "fixed" upon expiration of the 10-day period are the contractual rights of the high bidder to delivery of the deed upon tender of the purchase price and of the trustee to hold the bidder liable for that price. The rights of other parties, including those in possession, are not necessarily affected.

### B

Until the purchase price is paid and the deed delivered, then, the mortgagor retains some interest in the property. If there are surplus proceeds from the sale, the mortgagor ordinarily will be entitled to them. *See In re Castillian Apartments, Inc.*, 281 N.C. 709, 190 S.E. 2d 161 (1972). If for some reason the high bidder

defaults entirely and cannot be compelled to pay, the mortgagor remains personally liable. *See Jerome v. Great American Ins. Co.*, 52 N.C. App. 573, 279 S.E. 2d 42 (1981). The mortgagor may remain in possession pending closing. *Id.* These interests constitute some sufficient risk of pecuniary loss and chance of benefit that the Sprouses had an insurable interest in the house. *Id.*

C

The provisions of the Uniform Vendor and Purchaser Risk Act ("the Act"), G.S. 39-36 *et seq.*, support this result. If neither legal title nor possession has been transferred, and all or a material part of the subject property is destroyed without fault of the purchaser, as happened here, the vendor generally has no rights of enforcement as against the purchaser. G.S. 39-39(1). Though we have found no North Carolina case directly on point, the policy underlying the statute applies with equal force to sales contracts entered into through foreclosure sales. The purchaser's bid price reflects the same expectations of value. Saddling the purchaser with all the risk pending closing would be equally unfair, whether the price is set on the open market or at foreclosure. The Act places the risk of loss with the vendor(s) pending the high bidder's acquiring title or possession.

The legislatively approved policy of uniform interpretation is supported by this result. G.S. 39-38. New York has enacted a substantially similar statute. N.Y. Gen. Oblig. Law Section 5-1311 (McKinney 1978). In *N.Y. Medical College v. 15-21 E. 111th St. Corp.*, 90 N.Y.S. 2d 591 (Sup. Ct. 1949), the court held that sale at a judicial foreclosure sale created a contract for sale governed by the Act, noting the remedial nature of the Act. There the purchaser at the judicial sale was entitled to a refund of money paid under the unexecuted contract, since the premises suffered material damage without fault of the purchaser. *See also Approved Properties, Inc. v. City of New York*, 52 Misc. 2d 956, 277 N.Y.S. 2d 236 (Sup. Ct. 1966) (purchaser at city auction entitled to abatement for preclosing damage by vandals, but not for fire damage where memorandum of sale expressly shifted risk). Therefore under the Act the making of the high bid does not operate to extinguish the seller's interests and shift all the risks to the purchaser.

D

Here there is no dispute that the fire destroyed the house and that the Sprouses retained possession. There is nothing in the record documents of the foreclosure sale contractually shifting the risk of loss pending closing to Jim Walter, the high bidder, or anything suggesting Jim Walter was at fault for the fire. Accordingly Jim Walter would have had a valid defense to any action for specific performance of its commitment to purchase or to any action for deficiency under G.S. 45-21.30. If Potts had attempted a resale of the damaged premises after the fire, it is unlikely he would have obtained any sum approaching the mortgage debt. The Sprouses would have been liable for the deficiency under the note and deed of trust. Under the circumstances, they clearly had an insurable interest in the property. For these reasons, we hold that the court did not err in granting summary judgment to the Sprouses.

II

[2] Defendant's next assignment challenges the summary judgment in favor of Mid-State. At the time of the fire Mid-State was the named mortgagee under the policy, but previously had transferred its mortgagee rights to Jim Walter. There is no question about the validity or effect of the assignment as between Jim Walter and Mid-State. Mid-State's reacquisition of the debt from Jim Walter after the loss did not automatically restore its former position under the insurance policy. Mid-State acquired only whatever rights Jim Walter may have had at the time of the reassignment since the rights under the policy were fixed as of the time of the fire. *Pressley v. American Cas. Co.*, 14 N.C. App. 561, 188 S.E. 2d 734, *cert. denied*, 281 N.C. 623, 190 S.E. 2d 466 (1972). An assignee cannot acquire any greater right than the assignor possessed. *William Iselin & Co., Inc. v. Saunders*, 231 N.C. 642, 58 S.E. 2d 614 (1950). Therefore the real question is whether Jim Walter was barred from recovering under the policy. If Jim Walter could recover under the policy, then Mid-State may recover, but only by virtue of Jim Walter's subsequent undisputed and legitimate assignment of its rights under the policy, and *not* because Mid-State remained named as mortgagee.

A

Mid-State argues that we should disregard the existence of the two corporations and treat them as a single entity for purposes of this litigation. It does appear that the two corporations are controlled by substantially the same officers. Nevertheless, they are separate, have chosen to register separately in North Carolina, and here must be treated as separate entities. *Beech Mountain Property Owners' Ass'n v. Current*, 35 N.C. App. 135, 240 S.E. 2d 503 (1978). We have been shown no compelling equitable reasons for disregarding their status as separate corporate entities. *See Glenn v. Wagner*, 313 N.C. 450, 329 S.E. 2d 326 (1985). This argument is rejected.

B

Jim Walter clearly owned an insurable interest in the property at the time of the fire based on its acquisition of the note and Mid-State's rights to demand foreclosure on default. *Crouse v. Vernon*, 232 N.C. 24, 59 S.E. 2d 185 (1950); *Tech Land Development, Inc. v. South Carolina Ins. Co.*, 57 N.C. App. 566, 291 S.E. 2d 821, *disc. rev. denied*, 306 N.C. 563, 294 S.E. 2d 228 (1982). The question is whether Jim Walter would be barred from recovery for failure to notify defendant that it, rather than Mid-State, was the mortgagee at the time of the fire.

C

Defendant relies primarily on *Shores v. Rabon*, 251 N.C. 790, 112 S.E. 2d 556 (1960). There the Supreme Court enforced the policy in favor of the original mortgagee, who had acquired a one-half interest in the property at foreclosure, even though the mortgagee had given no notice of the sale and change in the nature of his interest. The *Rabon* court held that the mortgagee had no duty to give the insurer notice of foreclosure proceedings, since "[u]ntil moment of delivery of the deed there remained a possibility of redemption by the owners." *Id.* at 796, 112 S.E. 2d at 561. The Court cited with approval *Pioneer Sav. & Loan Co. v. St. Paul Fire & Marine Ins. Co.*, 68 Minn. 170, 70 N.W. 979 (1897), to the effect that clauses *requiring* notification of changes in ownership related to changes resulting not from acts of the mortgagee but from acts of the mortgagor or owners of the equity of redemption. We do not view *Rabon* as authority for summary

judgment for defendant. *Pressley v. American Cas. Co., supra,* is the only other case cited by defendant. There the unsuccessful plaintiffs were the named insureds, with no remaining insurable interest whatsoever in the property. As we have noted, Jim Walter clearly had in insurable interest either as mortgagee or as high bidder at foreclosure. The only question is the effect of their failure to give the insurer notice of the change of mortgagees.

### D

More persuasive is *Jerome v. Great American Ins. Co., supra.* There we upheld summary judgment where the fire insurance policy listed only plaintiff husband as the named insured though he had transferred all his interest to his wife as trustee for their children and for various lenders. Husband had transferred all his title even *before* he took out the policy of insurance. Nevertheless, we held not only that he had an insurable interest but also that since the "mortgage clause" in the policy did *not* state explicitly that the policy would become invalid upon change of mortgagee without notification, the insurer could not assert the mortgage clause as a bar to recovery. The mortgage provisions at issue here similarly contain no language invalidating the policy upon change of mortgagees.

Defendant argues that the policy does contain an anti-assignment provision, "Assignment of this policy shall not be valid unless we give our written consent." The policy itself was never assigned, however, only the note and deed of trust. The mortgagee's rights to maintain the policy would arise only upon the policyholders' failure to pay premiums. In addition, the mortgage clause specifically makes certain policy provisions applicable to the mortgagee, but not the anti-assignment clause, suggesting by its exclusion that it does not apply.

### E

The courts of other jurisdictions have uniformly held that an assignment of the note and mortgage by the mortgagee named in a policy carries with it the rights that existed in the assignor with respect to the policy without the consent of the insurer. *Kintzel v. Wheatland Mut. Ins. Ass'n,* 203 N.W. 2d 799 (Iowa 1973); *Central Union Bank v. New York Underwriters' Ins. Co.,* 52 F. 2d 823 (4th Cir. 1931); *Reinhardt v. Security Ins. Co.,* 312 Ill.

App. 1, 38 N.E. 2d 310 (1941); Annot., 78 A.L.R. 499 (1932). Only where the mortgage clause contains express language voiding the clause if the mortgagee's name does not appear therein has a different result been reached. *Lititz Mut. Ins. Co. v. Barnes*, 248 F. 2d 241 (5th Cir. 1957), *cert. denied*, 355 U.S. 931, 2 L.Ed. 2d 414, 78 S.Ct. 411 (1958). *Compare, Jerome v. Great American Ins. Co.*, *supra*. The rationale for this "general rule," was explained cogently in *Central Union Bank*:

> There can be no question, of course, but that the mortgagee may transfer with his debt such rights as arise from the pledge of the policy with him, or that the assignee of the mortgagee upon such transfer has the right to enforce same. The question is the narrower one as to whether the right of the mortgagee to recover on the policy, unaffected by the acts and defaults of the mortgagor, may be thus transferred; and this involves a consideration of the nature of the mortgage clause. Does that clause evidence a particular trust and confidence in the mortgagee, or is the trust rather in the mortgagor? Does the transfer of the rights of the mortgagee increase the hazard, or substitute a different risk, or is the hazard for all practical purposes the same? We think it clear that the latter is the case. The whole of the added protection of the clause relates, not to acts and omissions of the mortgagee, but to those of the mortgagor. Its purpose is that the policy shall stand as security for the debt unaffected by the mortgagor's conduct; and the agreement of the company to remain bound notwithstanding the acts or omissions of the *mortgagor evinces confidence*, not in the mortgagee but in the mortgagor, in whose possession the property remains, and the risk of whose conduct in violation of the terms of the policy is, to the extent of the debt, assumed by the company. So also the transfer of the debt and of the rights of the mortgagee in the policy does not affect the hazard; for the property remains in the possession of the insured, the mortgagor, and the right to apply the proceeds of the policy to the satisfaction of the debt, which is all that the mortgagee has, is neither increased nor diminished by the transfer.

> The contention that the company contracted to pay the loss under the policy only to the mortgagee named is hypertechnical. We have seen that no relation of personal con-

fidence is involved; and there would be as little reason in holding that the rights of the mortgagee in such case are not assignable as in holding that he might not assign a collateral note made payable to him, on the ground that only he had been named as payee.

52 F. 2d at 825. We find this reasoning persuasive.

### F

We therefore conclude that Jim Walter was covered as mortgagee under the policy at the time of the fire. By valid assignment following the loss, Mid-State acquired Jim Walter's right to the proceeds. Therefore, nothing else appearing, summary judgment for Mid-State was properly entered. We note that Jim Walter itself never filed proof of loss; however, defendant received timely notification of the loss and does not assert Jim Walter's failure as a bar to recovery. Nor does defendant contend that Jim Walter would be barred from recovering for failure to give notice of its status as mortgagee within a reasonable time after the original assignment, and we need not reach that question either. Defendant's second assignment is overruled.

### G

Defendant argues that this holding unfairly expands its liability, apparently relying on the terms of the mortgage clause "as interests appear." It is universally held that that language does not describe interests in the property, but in the mortgage debt. 5A J. Appleman & J. Appleman, Insurance Law & Practice Section 3401 at 285-86 (1970). Defendant contracted and accepted premiums to cover the fire damage, not particular property interests. The Sprouses remained liable on the entire note, and Mid-State had a valid claim for that amount. How the Sprouses and Mid-State divided the proceeds is immaterial to the insurer.

### III

[3] By its third assignment defendant contends that the trial court erred by denying its motion for summary judgment against Potts on the ground that Potts failed to compel Jim Walter to perform on its bid, and in allowing Potts' motion for summary judgment in his favor.

A

Defendant relies again on its strained construction of the fixing of rights language in G.S. 45-21.29A. As we have seen, however, the rights fixed by that statute are solely contractual in nature and do not involve any transfer of title. They are subject to the provisions of G.S. 39-39, under which Potts, had he attempted to compel Jim Walter to perform, would have been unable to do so. Contrary to defendant's contention, nothing in G.S. 45-21.29A shifts the risk of loss prior to closing to the high bidder. In fact, the high bidder cannot compel relinquishment of the premises until the price has been paid in full, G.S. 45-21.29(k), and the mortgagor remains subject to personal liability on the note until then. *Jerome v. Great American Ins. Co., supra.* If Potts could not enforce the sale to Jim Walter, he could not be liable to defendant for his failure to do so.

B

If Potts could not compel Jim Walter to perform on its bid, what other action could he take? Defendant claims Potts is liable to it for dismissing the foreclosure proceedings without its consent.

The deed of trust creating the trusteeship is a contract. It simply authorizes the trustee to exercise the power of sale in accordance with the provisions of G.S. Chapter 45. The trustee is not *required* to do so (the noteholder being protected by its right to initiate judicial foreclosure proceedings). The trustee may postpone an announced sale for "good cause" and apparently without limit on the length of postponement. G.S. 45-21.21. If a sale has been held, and the high bidder defaults, the trustee may, but is *not required to*, hold a resale. G.S. 45-21.30. It appears that the trustee has substantial discretion in discharging his responsibilities, which are to attempt to satisfy the debt while getting the highest price for the mortgagor and protecting the mortgagor's rights and equity. As long as the trustee does not violate the fiduciary duty of the office, and does not give unfair advantages to any party, *see Gregg v. Williamson*, 246 N.C. 356, 98 S.E. 2d 481 (1957); *Furst v. Loftin*, 29 N.C. App. 248, 224 S.E. 2d 641 (1976), the exercise of that discretion is not reviewable by the courts.

In this case Potts could have held a resale or even sued Jim Walter for the purchase price. G.S. 45-21.30; 59 C.J.S. Mortgages Section 580 (1949). On the other hand, Potts was aware that there was a valid policy of insurance, which, if paid, would not only satisfy the debt but might completely protect the mortgagor's equity in the property. Under the circumstances, it was within his power as trustee to postpone the sale or resale pending resolution of the insurance claim. G.S. 45-21.21. We see no reason why it was not equally within his power to abandon or withdraw the sale proceeding, the high bid of which was unenforceable, particularly since this was with the consent of the mortgagee at whose request the sale was commenced in the first place and with the consent of the mortgagors. If the insurance claim later proved unenforceable, Potts could simply commence a new sale at that time.

*Kentucky Farm Bureau Mut. Ins. Co. v. Conley*, 498 S.W. 2d 122 (Ky. App. 1973), cited by defendant, is clearly distinguishable. That case relied on the doctrine of equitable conversion, which no longer applies in North Carolina since the enactment of the Uniform Vendor and Purchaser Risk Act. J. Webster, Real Estate Law in N.C. Section 151 (Hetrick rev. ed. 1981).

C

Defendant claims unfair prejudice from the dismissal, claiming that it defeated its right to subrogation against the high bidder and expanded the Sprouses' insurable interest. Defendant's subrogation rights depended on the rights of the trustee under G.S. 45-21.30. If the trustee could not compel performance on the high bid, as we have seen he could not, defendant had no better right. *Thomas v. Ray*, 69 N.C. App. 412, 317 S.E. 2d 53 (1984). The expansion of the Sprouses' interest has been discussed earlier. Defendant contracted, and received premiums, to pay "as interests appear." As to the division of the proceeds to pay the debt and otherwise, defendant is without standing to complain.

D

We therefore conclude that Potts was entitled to summary judgment. Defendant's third assignment of error is overruled.

IV

[4] Defendant's final assignment of error challenges the award of attorney fees to Potts under G.S. 6-21.5. Defendant does not con-

test the trial court's findings supporting the *amount* awarded, but argues (1) that the trial court failed to make any findings as to the "complete absence of a justiciable issue" in its counterclaim and (2) that its claim against Potts was in fact justiciable.

A

The statute, G.S. 6-21.5, was enacted in 1984, and applies to actions begun after 1 October 1984. 1983 N.C. Sess. Laws (Reg. Sess. 1984) c. 1039, s. 2. This action was begun 31 October 1984, and therefore the statute applies. It reads in relevant part:

> In any civil action or special proceeding the court, upon motion of the prevailing party, may award a reasonable attorney's fee to the prevailing party if the court finds that there was a complete absence of a justiciable issue of either law or fact raised by the losing party in any pleading. . . . A party who advances a claim or defense supported by a good faith argument for an extension, modification, or reversal of law may not be required under this section to pay attorney's fees. The court shall make findings of fact and conclusions of law to support its award of attorney's fees under this section.

This statute has not been construed by our courts to date.

B

As to the sufficiency of the findings, the court did make an appropriate finding "that there was a complete absence of any justiciable issue of either law or fact raised by defendant in its counterclaim" against Potts in its order allowing summary judgment, reserving judgment as to the amount until a later hearing. The absence of the finding in the second order is thus insignificant.

The statute involves the absence of justiciable issues in *pleadings*. The sufficiency of a pleading is after all a question of law for the court. *Sutton v. Duke*, 277 N.C. 94, 176 S.E. 2d 161 (1970). The trial court ordinarily makes no findings in determining that a complaint is insufficient, and even if it does, they may be of no effect. *White v. White*, 296 N.C. 661, 252 S.E. 2d 698 (1979). This court is equally qualified to pass on the sufficiency of defendant's pleadings, in light of the record, to raise a justiciable issue. The court's finding is therefore formally sufficient. We need only determine if it was justified.

C

A "justiciable issue" is not defined by our statutes or case law. A "justiciable controversy" is a real and present one, not merely an apprehension or threat of suit or difference of opinion. *See Gaston Bd. of Realtors, Inc. v. Harrison*, 311 N.C. 230, 316 S.E. 2d 59 (1984). Presumably, a "justiciable controversy" involves "justiciable issues," thus those which are real and present, as opposed to imagined or fanciful. "Complete absence of a justiciable issue" suggests that it must conclusively appear that such issues are absent even giving the losing party's pleadings the indulgent treatment which they receive on motions for summary judgment or to dismiss. *See Vassey v. Burch*, 301 N.C. 68, 269 S.E. 2d 137 (1980); *Sutton v. Duke, supra.*

D

Upon review of defendant's counterclaim, we hold that such absence of a real issue as to Potts' liability does conclusively appear and that the court properly awarded attorney fees. Defendant's claim against Potts rests on its contention that Potts was required to enforce Jim Walter's high bid. As discussed above, this contention rests solely on a strained construction of an isolated sentence in G.S. 45-21.29A, ignores the substantial discretionary powers of the trustee, ignores the existence of the Uniform Vendor and Purchaser Risk Act, G.S. 39-39(a), and is unsupported by any North Carolina law. These are all matters of which defendant should have been aware. Defendant has furthermore never suggested how, if at all, any action or inaction by Potts justified its *total* refusal to honor any claims, when the amount due on the policy exceeded the amount of the mortgage debt. Finally, defendant never alleged that Potts acted in any other than a good faith manner, nor has it specifically suggested how if at all Potts breached his fiduciary obligations. A trustee should not, in the absence of *some* such breach, be required to expend his or her own resources defending against meritless claims and delaying tactics. The award of attorney fees was entirely proper.

CONCLUSION

Defendant has failed to demonstrate any error in the grant of summary judgment against it or in the award of attorney fees to Potts. The judgment and order appealed from are therefore

Affirmed.

Judges WEBB and PARKER concur.